## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
)
**AMERICAN HOME** )
**ASSURANCE COMPANY,** )
    **Plaintiff** )
)       **CIVIL ACTION NO.**
**v.** )       **04-cv-12597 WGY**
)
**MAINE COAST MARINE** )
**CONSTRUCTION, INC. and** )
**GUY SPLETTSTOESSER** )
    **Defendants** )
_____)

## JOINT PRE-TRIAL MEMORANDUM

The parties in the above captioned action, by their attorneys, submit the following Pre-Trial Memorandum pursuant to and in accordance with Local Rule 16.5. The Final Pre-Trial Conference is scheduled for July 5, 2006.

1.    **Concise Summary of the Evidence**

a.    **Plaintiff's Summary of Evidence**

    **1(a) Plaintiff American Home Assurance Company's Summary of Evidence**

    *LIABILITY*

At all times material hereto, American Home insured C.B. Marine Corporation, Fore River Dock and Dredge and Roger Hale under a policy of marine insurance. C.B. Marine owned the Tug SEAWIND, the Barge DS64 and the barge's tools and equipment. C.B. Marine leased the Tug, Barge, tools and equipment to Fore River pursuant to a written agreement. The Tug SEAWIND is a 25.5 foot steel-hulled push boat with a flat bottom and a blunt raked bow and

stern.  The Barge DS64 was a dump scow fitted with a Comex Box containing a wide variety of tools and equipment used in Fore River's marine construction business.

Prior to December 11, 2002, Fore River hired defendant Maine Coast to provide a licensed captain to transport the Tug and Barge from Gloucester, Massachusetts to the "Chain Bridge" job site in Amesbury, Massachusetts.  In its dealing with Maine Coast, Fore River dealt directly with Guy Splettstoesser, who was a 50% owner of Maine Coast and the only principal of the company who had a captain's license.

On or about December 11, 2002, the Tug SEAWIND and Barge DS64 and related tools and equipment grounded on the beach near Plum Island, at the mouth of the Merrimack River in or around Newburyport, Massachusetts.  At the time of the grounding, Guy Splettstoesser was the vessels' Master.  American Home respectfully asserts that it is beyond reasonable dispute that Maine Coast, through its employee and principal Splettstoesser, was negligent in causing the grounding.

Captain Splettstoesser himself testified that the Tug SEAWIND was underpowered to handle the expected and typical currents of the Merrimack River.  He testified that he nonetheless brought the Tug and Barge to the mouth of the Merrimack River because at the time he was ignorant of the typical and normal prevailing conditions.  He testified that in hindsight he would never attempt to negotiate the treacherous waters of the Merrimack with a vessel of the Tug SEAWIND'S size and horsepower.  American Home respectfully asserts that the Captain's ignorance is clear and inexcusable negligence.

James LaPlante (the other 50% owner of Maine Coast) opined that Splettstoesser was at least partially to blame in causing the grounding.  Mr. LaPlante testified that Mr. Splettstoesser unadvisedly attempted to navigate the mouth of the Merrimack River in an underpowered vessel.

Significantly, prior to the voyage, Mr. LaPlante warned Splettstoesser not to attempt to navigate the Merrimack River in an underpowered vessel. Mr. LaPlante testified that his warning "fell on deaf ears." At the time, Mr. Splettstoesser was preoccupied with financial difficulties, business disputes, marital/extramarital issues and an apparent pornography addiction.

The defendants' suggestion that Fore River was contributorily negligent is providing an underpowered vessel is specious. Fore River wanted to transport its vessels to the new job site and it hired a licensed captain to accomplish this task. Fore River relied on Splettstoesser's knowledge, education, training and expertise. As Captain, Splettstoesser had a non-delegable obligation to the owner and crew to insure the safety of person and property.

If Splettstoesser had reservations regarding the appropriateness of the Tug SEAWIND to withstand the expected conditions, he should have voiced these concerns to Fore River, and alternate arrangements could have been made. For example, Splettstoesser testified that Fore River's Tug ALBANY was of sufficient size and horsepower to safely tow the Tug SEAWIND and Barge DS64 on the voyage. However, Splettstoesser never voiced any concerns because he was allegedly ignorant of the dangers. Such ignorance by a licensed captain is clear negligence. However, when viewed in light of LaPlante's warning, Mr. Splettstoesser's actions can only be viewed as foolhardy.

Maine Coast's argument that Splettstoesser was not working within the scope of his employment at the time of the grounding is also specious. In his pleadings filed in this case, Splettstoesser has admitted he was working within the scope of his employment at Maine Coast at the time of the grounding.

Maine Coast's argument that even though Splettstoesser was a 50% owner of Maine Coast, his oral agreement with LaPlante prohibited him from bringing business into the company

3

is difficult to believe.  However, even if it is true, this unusual arrangement is irrelevant to the case because Maine Coast and Splettstoesser failed to communicate it to Fore River.  Fore River contacted a principal of Maine Coast by calling Splettstoesser on a cell phone paid for by Maine Coast.  Splettstoesser drove to the job site in a truck paid for by Maine Coast.  Fore River reasonably believed it was dealing with Maine Coast.  As such, Maine Coast cannot argue that Splettstoesser was acting in his individual capacity based on Splettstoesser and LaPlante's alleged secret agreement that the job in question was not a "Maine Coast" job.

Prior to the grounding, Fore River was Maine Coast's biggest customer, accounting for 50% of Maine Coast's work.  On one previous job, where Splettstoesser was running the Tug Albany at night, Splettstoesser requested that Fore River make the check payable to him individually.  Fore River's acquiescence in this regard is irrelevant to the instant case, which does not involve the Tug Albany and does not involve a night job.  Moreover, Fore River acquiescence in the way it drafted a prior check on a prior job certainly does not absolve Maine Coast from liability.

*DAMAGES*

The plaintiff suffered the following damages as a proximate cause of the defendants' negligence:

| | | |
|---|---|---|
| 1. | Sterling Equipment/Testa Demolition, wreck removal: | $205,000 |
| 2. | Additional wreck removal costs, per escrow report: | $50,475.98 |
| 3. | Liability for Fore River's clean up costs, per court order: | $33,199.87 |
| 4. | Liability for insured's tools and equipment, per court order | Appx. $300,000 |

**b.**     **<u>Defendant's Summary of Evidence</u>**

**1(b) Defendant Maine Coast Marine's Summary of Evidence**

4

Background and Discussion Regarding Liability

This litigation is a subrogation action filed by he insurance company that insured Fore River Dock and Dredge and C-B Marine, American Home. The case stems from the December 11, 2002 grounding of the Tugboat SEAWIND II ("Tugboat") and its Barge DS64 ("Barge") on Plum Island in Newbury, Massachusetts. The Tugboat and Barge were damaged in the accident. Both vessels were owned by C-B Marine and leased to Fore River under an equipment lease agreement entered into by the President of Fore River, Roger A. Hale, and C-B Marine. Fore River is a maritime dredging and construction business that operates its business entirely with leased vessels, tools and equipment. C-B Marine is owned by Roger A. Hale's father.

Maine Coast Marine Construction is a maritime construction company founded by James LaPlante and another individual in the late 1990's. At the time of the grounding, Guy Splettstoesser had recently become a co-owner and the Treasurer of Maine Coast Marine Construction, Inc. His duties primarily consisted of performing labor on the job sites, be it on barges, tugs or piers. His only administrative business task, as co-owner, was to do the billing. He did not schedule any jobs, procure business or negotiate the terms of any contracts for the company. All of these business decisions were handled by James LaPlante. Financially, LaPlante and Splettsoesser split the finances and profits evenly; but all the business decisions were left to LaPlante by agreement, based on LaPlante's greater experience in these matters. LaPlante was 46 years old at the time of the 2002 grounding; and Splettsoesser was 26.

Both LaPlante and Splettsoesser expected to be paid a weekly check by their own company based on the number of hours per week they worked. LaPlante was dissatisfied with Splettstoesser's diminished attention to MCM business and with Splettstoesser's reduced hours

spent on the business in 2002. In late 2002, if Splettstoesser worked for MCM for less than 40 hours a week, he and LaPlante agreed he was going to be paid a weekly check based strictly on the hours he worked. In 2002, Splettstoesser personally performed several independent "side jobs" to earn more money, in addition to the weekly checks he drew from MCM.

MCM will establish that on December 11, 2002, Fore River hired Guy Splettsoesser in his individual capacity as a subcontractor to operate the tugboat involved in the subject grounding incident. Splettstoesser has been hired directly by Fore River before and this was one more occasion during which he was "moonlighting' to earn additional money.

Splettsoesser has testified in deposition that he was personally hired by Fore River to tow a barge from Gloucester, Massachusetts to Newburyport, Massachusetts on December 11, 2002. He testified he scheduled this job and only James LaPlante scheduled the jobs for MCM. He is also expected to testify at trial that he was neither acting on behalf of MCM nor doing anything to further MCM's interests at the time.

The U.S. Coast Guard concluded in its report on the grounding incident that the Tugboat Guy Splettstoesser used to tow the Barge was an inadequate vessel to tow a barge the size of the Barge DS64. Defendant Splettstoesser is expected to present expert testimony that C-B Marine and Fore River provided him with a Tugboat that was unseaworthy and that was inappropriate for the job.

MCM can only be found liable in this lawsuit under the doctrine of *respondeat superior*. MCM maintains that the evidence will not support the plaintiffs' claim that Splettstoesser was acting as an agent of MCM at the time of the grounding.

Damages

The damages were not the proximate cause of Maine Coast Marine. Damages will be left to proof. Any damages awarded will be reduced by the contributory negligence of the assureds in this subrogation action.

**c.    Defendant's Summary of Evidence**

1(c) Defendant Guy Splettstoesser Summary of Evidence

Background and Discussion Regarding Liability

This litigation is a subrogation action filed by American Home Assurance Company ("American Home"), the insurance company that insured Fore River Dock and Dredge, Inc. ("Fore River") and C-B Marine Corporation ("C-B Marine"). The case stems from the December 11, 2002 grounding of the Tugboat SEAWIND II and its Barge DS64 ("Barge") on Plum Island in Newbury, Massachusetts. The SEAWIND II and Barge were damaged in the accident. Both vessels were owned by C-B Marine and leased to Fore River under an equipment lease agreement entered into by the President of Fore River, Roger A. Hale, and C-B Marine.

Fore River is a maritime dredging and construction business that operates its business entirely with leased vessels, tools and equipment. C-B Marine is owned by Roger A. Hale's father, Roger P. Hale. The senior Hale is a successful businessman from Portland, Maine, and has worked in the marine construction business for decades.

Guy Splettstoesser is a 32-year-old resident of South Portland, Maine. He started working for the Hale family in high school as a deckhand, and worked for them for most of his adult life until joining Maine Coast Marine Construction, Inc. ("MCM") in 2002. At that time, Splettstoesser became licensed to operate vessels up to 200 tons.

MCM is a maritime construction company co-founded by James LaPlante in the late 1990's. LaPlante is 50 years old and had worked for the Hale family for many years prior to

founding MCM.  In early 2002, Splettstoesser became a co-owner and the Treasurer of MCM.

His duties primarily consisted of piloting ships and performing labor on the job sites, be it on

barges, tugs or piers.  His principal administrative business task, as co-owner, was to do the

billing.  He did not typically schedule any jobs, procure business or negotiate the terms of any

contracts for the company.  These business decisions were usually handled by LaPlante because

he had greater experience in these matters.  Financially, LaPlante and Splettsoesser split the

finances and profits evenly.

Approximately half of MCM's work was with companies owned by the Hale family.

Further, in the early winter of 2002, with LaPlante's blessing, Splettstoesser performed several

independent "side jobs" for Fore River on a dredging job off Gloucester, Massachusetts.  This

job involving dredging mud near a marina on the Annisquam River near Gloucester and piling it

on the Barge.  The SEAWIND II would then bring the Barge to the open ocean, where the

tugboat ALBANY would pick the Barge up and haul it three miles off the coast and dump the

mud.

The ALBANY is a large tugboat over 100 feet in length that is designed to operate

offshore.  In contrast to the ALBANY, the SEAWIND II is a small tugboat 25.5 feet in length

that is designed to operate in coastal areas.  Splettstoesser was licensed to operate the ALBANY,

but no license was needed to operate the SEAWIND II because it is less than 26 feet in length.

Even deckhands would operate the SEAWIND II from time to time.  All of Splettstoesser's prior

side jobs with Fore River involved piloting the ALBANY.

On December 11, 2002, Splettstoesser was called by Fore River and asked to pilot the

Barge from Gloucester approximately 10 miles to a new job site off Newburyport,

Massachusetts.  There was no discussion of which particular vessel would pilot the Barge, or

whether this particular job was through MCM or a side job.  In any event, Splettstoesser agreed to pilot the Barge and drove from Maine to Gloucester later that morning.  At that time, the Barge was located on the Annisquam River with the SEAWIND II.  Splettstoesser assumed he would pilot the Barge to the open ocean, stop and anchor the Barge, pick up the ALBANY, and haul both the Barge and the SEAWIND II with the ALBANY to Newburyport.  Based on these assumptions, Splettstoesser assumed this was a side job, not a job through MCM.

Splettstoesser and four other crew members were on board either the SEAWIND II or the Barge as it traveled up the Annisquam River.  The leader of the crew was Ron Daigle, an experienced foreman under whom Splettstoesser had worked for many years in his prior employ with the Hale family.  When the vessels reached the open ocean and Splettstoesser prepared to stop, Daigle motioned for Splettstoesser to keep going and head directly for Newburyport.  Splettstoesser and another crewmember, Hans Eichorn, exchanged glances because they knew the voyage would take longer (and be louder) because the SEAWIND II was a smaller boat with noiser engines.  Splettstoesser still felt the journey could be completed safely before rougher weather forecast for that evening blew in.

Halfway to Newburyport, the weather got rougher earlier than expected.  Because of this, the SEAWIND II switched from pushing the Barge to pulling it.  This slowed the vessels down.  By the time the vessels reached Newburyport, the weather had become quite rough.  The SEAWIND II passed the buoy for the Merrimack River and began to turn upriver, but a couple of large twelve foot waves struck and the Barge could not make the turn.  The SEAWIND II lost control and hit the Barge, and both vessels ended up grounding on Plum Island.

After the grounding, Fore River tendered a check to MCM for Splettsoesser's services, which LaPlante of MCM refused to cash.  Roger A. Hale will testify that Fore River hired

Splettsoesser in his capacity as an employee of MCM to pilot the Barge to Newburyport using the SEAWIND II. Fore River did not consider this particular job to be a "side job" because Splettsoesser was not piloting the ALBANY, a vessel which required Splettsoesser's special license. Splettsoesser has never been paid by Fore River for this job.

Damages

Whether the damages were the proximate cause of Splettsoesser's negligence, or caused by Fore River's foreman insistence on using the SEAWIND II instead of the ALBANY, is an issue in dispute. The extent of damages will be left to proof. Any damages awarded will be reduced by the contributory negligence of the assureds in this subrogation action.

**2.      Facts Established by Pleadings or by Stipulation or Admissions of Counsel**

1.      The plaintiff, American Home Assurance Company (hereinafter "American Home"), was and now is and at all pertinent times hereto, a corporation duly organized and existing by virtue of the laws of the State of New York, with a principal place of business at 70 Pine Street, New York, New York, 10270. American Home is in the business of, *inter alia*, underwriting marine risks.

2.      The defendant, Maine Coast Marine Construction, Inc., (hereinafter "Maine Coast Marine") was and is a corporation duly organized and existing by virtue of the laws of the State of Maine. At all times material hereto, Maine Coast Marine was in the business of, *inter alia*, marine construction.

3.      At all times material hereto, Guy Splettstoesser was an individual residing within the State of Maine. At the time of the grounding, Guy Splettstoesser was a principal of Maine Coast Marine.

4.      At all times material hereto, Fore River Dock & Dredge, Inc. (hereinafter "Fore River"), was a corporation duly organized and existing by virtue of the laws of the State of Maine, with a principal place of business in Portland, Maine.

5.      At all times material hereto, C.B. Marine Corporation (hereinafter, "C.B. Marine"), was a corporation duly organized and existing by virtue of the laws of the State of Maine, with a principal place of business in Portland, Maine.

6.      At all times material hereto, Roger A. Hale, was and now is an individual residing within the State of Maine.

7.      At all times material hereto, C.B. Marine owned the Tug SEAWIND, the Barge DS64 and the barge's tools and equipment.  C.B. Marine leased the Tug, Barge, tools and equipment to Fore River pursuant to a written agreement.  The Tug SEAWIND is a 25.5 foot steel-hulled push boat with a flat bottom and a blunt raked bow and stern.

8.      Fore River, C.B. Marine and Roger A. Hale (hereinafter collectively, "the Assureds"), entered into a contract of marine insurance, Protection & Indemnity Policy No. B208102, along with various endorsements (hereinafter the "P&I Policy") as named Assureds, with American Home.  American Home agreed to insure the Assureds' vessels, Tug SEAWIND and Barge DS64, among others, pursuant to the policy's terms, conditions and limitations, against certain perils for the period of May 1, 2002 to May 1, 2003.

9.      On or about December 11, 2002, the Tug SEAWIND and Barge DS64 and related tools and equipment grounded on the beach near Plum Island, at the mouth of the Merrimack River in or around Newburyport, Massachusetts.  At the time of the grounding, Guy Splettstoesser was the vessels' Master.

10.     After the grounding, the Town of Newbury, through its Conservation Commission, ordered C.B. Marine and Fore River to remove the Tug SEAWIND and the Barge DS64 from the beach.

11.     Thereafter, through counsel, the plaintiff's Assureds made claim against American Home under the policy's wreck removal provision, for costs incurred for the removal and salvage of the Tug SEAWIND and Barge DS64, as well as for costs incurred in providing security, and for the loss of certain equipment that was aboard the vessel at the time of the grounding.

**3.     Contested Issues of Fact**

1.     Whether the defendants were negligent, and if so, whether said negligence caused the plaintiff's damages;

2.     Whether the defendants breached a Warranty of Workmanlike Performance, and if so, whether said breach caused the plaintiff's damages;

3.     Whether the defendants breached a contract with the plaintiff, and if so, whether said breach caused the plaintiff's damages;

4.     Whether the plaintiff is entitled to indemnity from the defendants for its damages arising out of or incidental to the grounding of the Tug SEAWIND and the Barge DS64.

5.     Whether the plaintiff is entitled to contribution from the defendants for its damages arising out of or incidental to the grounding of the Tug SEAWIND and the Barge DS64.

6.     The amount, nature and extent of the plaintiff's damages.

7.     Whether Defendant Splettstoesser was acting as an agent of/within the scope of his employment with Maine Coast Marine Construction at the time of the grounding incident on December 11, 2002;

8.     Whether Defendant Splettstoesser was negligent in performing his captain's duties on December 11, 2002;

9.     Whether Fore River, the Tug owner, and the assured in this subrogation case, was contributorily negligent in providing an unseaworthy or underpowered vessel for the tow on December 11, 2002;

10.    Whether the negligence, if any, of Defendant Splettsoesser was the proximate cause of the plaintiff's damages?

11.    Whether the negligence, if any, of Fore River was the proximate cause of the plaintiff's damages?

12.    Whether Defendant Splettstoesser was acting as an agent of/within the scope of his employment with Maine Coast Marine Construction at the time of the grounding incident on December 11, 2002;

13.    Whether Defendant Splettstoesser was negligent in performing his captain's duties on December 11, 2002;

14.    Whether Fore River, the Tug owner, and the assured in this subrogation case, was contributorily negligent in providing an unseaworthy or underpowered vessel for the tow on December 11, 2002;

15.    Whether the negligence, if any, of Defendant Splettsoesser was the proximate cause of the plaintiff's damages?

16.    Whether the negligence, if any, of Fore River was the proximate cause of the plaintiff's damages?

**4.     Jurisdictional Questions**

None.

**5.**    **Questions Raised by Pending Motions**

None.

**6.**    **Issues of Law**

The parties do not expect any unusual issue of law.

**7.**    **Requested Amendments to the Pleadings**

American Home has brought this case as subrogee of C.B. Marine, Fore River and Roger

Hale.  The monies expended by American Home were monies paid on behalf of its insureds

under the policy of insurance.  As such, American Home respectfully prays that the case caption

as communicated to the jury be styled in the names of the insured and that the jury not be

informed of the presence of insurance.

**8.**    **Additional Matters to Aid in Disposition of the Action**

None at this time.

**9.**    **Probable Length of Trial**

The Parties estimate that the trial of this case will take approximately 5 days.

**10.**    **Witnesses**

**a.**    <u>**Plaintiff's Witnesses**</u>

In addition to those witnesses listed by the Defendants, the Plaintiff reserves the right to

call the following witnesses:

1.    Lincoln Purdy
      c/o American International Marine Agency of MA
      99 High Street
      Boston, MA

2.    Carole Peterson
      c/o American International Marine Agency of MA
      99 High Street

Boston, MA

3.      Christine Crawford
     c/o FM Global Insurance
     Norwood, MA

4.      Roger P. Hale
     W. Scarborough, ME

5.      Roger A. Hale
     Limington, ME

6.      Attorney Leonard Langer
     Portland, ME

7.      David Sterling
     Cape Elizabeth, ME

8.      Representative of ARI Insurance

9.      Representative of USCG

10.     David Dubois, Neil Rosen or other representative of Marine Safety Consultants
    22 Water Street
    Fairhaven, MA

11.     Michael Collyer (factual/expert)
    Marine Safety Consultants
    22 Water Street
    Fairhaven, MA

12.     Richard Harden
    Marine Safety Consultants
    Portland, ME

13.     Douglas Packer or other representative Town of Newbury

14.     Guy Splettstoesser and/or other representative of Main Coast Marine Corporation

15.     Ron Daigle
    Durham, Me

16.     Hans Eichorn
    Portland, ME

17.    Michael Buchanan
       Gorham, ME

18.    John T. Harding Esq.
       Morrison Mahoney & Miller
       20 Summer St.
       Boston, MA

19.    Representative First Specialty Ins.
       Overland Park, Kansas

20.    Capt. Dave Swiss
       or other representative of Sea Tow Services

21.    Representative Cashman Equipment Corp.
       Boston, MA

22.    Representative Testa Demolition
       Boston, MA

23.    Lorna Rosquites
       AI Marine Adjusters
       99 High Street
       Boston, MA

24.    James LaPlante
       Main Coast Marine Construction

25.    Melody Hale
       Limington, ME.

26.    Attorney Nico Walsh
       Portland, ME

**b.    Defendant's Witnesses**

**Defendant Maine Coast Marine's Witnesses:**

In addition to those witnesses listed by the other parties, the Defendant Maine Coast Marine Construction, Inc. reserves the right to call the following witnesses:

1.    Roger A. Hale
      Limington, ME

2.    Melody Hale

Limington, ME

3.        Guy Splettstoesser
          So Portland, ME

4.        James LaPlante
          So. Portland, ME

5.        Nico Walsh, Esq.
          Portland, ME

6.        Roger P. Hale
          West Scarborough, ME

7.        Rick Harden
          Marine Safety Consultants


c.        **Defendant's Witnesses**

**Defendant Splettsoesser's Witnesses:**

          In addition to those witnesses listed by the other parties, the Defendant reserves the right
to call the following witnesses:

1.        Roger A. Hale
          Limington, ME

2.        Melody Hale
          Limington, ME

3.        Guy Splettstoesser
          So Portland, ME

4.        James LaPlante
          So. Portland, ME

5.        Nico Walsh, Esq.
          Portland, ME

6.        Roger P. Hale
          West Scarborough, ME

7.        Thomas Hill
          Marine Expert

**11.    Proposed Exhibits**

**A.    <u>Plaintiff's Proposed Exhibits</u>**

In addition to the exhibits listed by the Respondents, the Petitioner reserves the right to introduce the following exhibits:

a.    Exhibits attached to Petitioner's Motion for Summary Judgment in the case of American Home Assurance Company v. C.B. Marine Corp., et al.

b.    Exhibits attached to Respondents Motion for Summary Judgment in the case of American Home Assurance Company v. C.B. Marine Corp., et al.

c.    Photographs of vessels and wreck removal scene;

d.    Exhibits attached to Affidavit of Lincoln Purdy;

d.    No cure no pay removal contract;

e.    Invoices for wreck removal;

f.    Documents concerning previous payments received by Maine Coast Marine;

g.    Pleadings;

h.    Fore River invoices

i.    Removal Orders, Town of Newbury

j.    USCG Report

k.    Plan of vessel

l.    Survey of vessel

m.    Underwriting File

n.    Files of Marine Safety Consultants

o.    Escrow Print out

p.      List of damaged/lost equipment provided by Fore River

q.      List of damaged/lost equipment provided by Fore River (with values)

R.      Correspondence from Great Meadow Farm to Mike Collyer regarding dune restoration

S.      Correspondence from Attorney Remmel dated September 1, 2004, September 9, 2004, August 31, 2005,

T.      Wreck removal plan

U.      Master Equipment Lease Agreement between C.B. Marine and Fore River

V.      WPA Emergenct Certification Form

W.      American Home Ins. Policy

X.      American Home checks re:  wreck removal and related costs

Y.      Nautical Chart

Z.      All exhibits from depositions

AA.     Charges of Fore River for work at site

BB.     Deposition Transcripts

CC.     Deposition transcripts of individuals aboard Tug Seawind and Barge DS64 prior to grounding

DD.     Maine Coast Payroll records

EE.     Maine Coast invoices

**B.      Defendant's Proposed Exhibits**

**Defendant Maine Coast Marine's Proposed Exhibits**

In addition to the exhibits listed by the other parties, Defendant Maine Coast Marine reserves the right to introduce the following exhibits:

a.      Deposition exhibits to Roger A. Hales's 11/14/05 deposition transcript;

b.    Deposition exhibits to James LaPlante's 11/14/05 deposition transcript;

c.    Maine Coast Marine's payroll records:

d.    Records of payments made to Guy Splettsoesser by Fore River;

e.    Interrogatory Answers of Guy Splettstoesser filed in lawsuit of C.B. Marine v Maine Coast Marine and Fore River v Guy Spletttstoesser, docket number CV-04-774

f.    Records of payments made to Maine Coast Marine by Fore River;

g.    Maine Coast Marine Invoices to Fore River;

h.    Fore River Vendor Quick Reports;

i.    Fore River Employee Quick Reports;

j.    Fore River Account Quick Reports

k.    Deposition Transcript of Guy Splettstoesser of 6/27/06

l.    Deposition Exhibits to Guy Splettstoesser deposition transcript of 6/27/06

m.    Deposition Transcript of James LaPlante of 6/27/06

n.    Deposition Exhibits to James LaPlante's deposition transcript of 6/27/06.

o.    Deposition transcript of Roger A. Hale of 11/14/05

p.    Deposition Exhibits to Roger A. Hale's deposition transcript of 11/14/05.

q    Deposition transcript of Roger P. Hale of 11/12/05.

r.    Corporate records of Maine Coast Marine Construction, Inc.

**c.    <u>Defendant's Exhibits</u>**

In addition to the exhibits listed by the other parties, Defendant Splettsoesser reserves the right to introduce the following exhibits:

a.    Map of voyage from Gloucester to Newburyport;

**American Home Assurance Company**


/s/_____
Robert J. Murphy, BBO # 557659
HOLBROOK & MURPHY
15 Broad Street
Boston, MA  02109
(617) 428-115


**Maine Coast Marine Construction**


/s/

_____
Cathy Skeirik Roberts, Esq.
BBO #547407
THOMPSON & BOWIE, LLP
Three Canal Plaza
P.O. Box 4630
Portland, ME  04112
(207) 774-2500


**Guy Splettsoesser**


 _/s/_____
Aaron K. Baltes, ME Bar No. 8754
NORMAN, HANSON & DETROY, LLC
415 Congress Street
Portland, ME 04103
(207) 774-7000